UNITED STATES DISTRICT COURT
<u>WESTERN DISTRICT OF NEW YORK</u>

| | | |
|---|---|---|
| ALLEN B., | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Case # 1:20-cv-038-DB |
| | § | |
| COMMISSIONER OF SOCIAL SECURITY, | § | MEMORANDUM DECISION |
| | § | AND ORDER |
| Defendant. | § | |

## <u>INTRODUCTION</u>

Plaintiff Allen B. ("Plaintiff") brings this action pursuant to the Social Security Act (the "Act"), seeking review of the final decision of the Commissioner of Social Security (the "Commissioner"), that denied his application for Disability Insurance Benefits ("DIB") under Title II of the Act, and his application for supplemental security income ("SSI") under Title XVI of the Act. *See* ECF No. 1. The Court has jurisdiction over this action under 42 U.S.C. §§ 405(g), 1383(c), and the parties consented to proceed before the undersigned in accordance with a standing order (*see* ECF No. 14).

Both parties moved for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). *See* ECF Nos. 11, 12. Plaintiff also filed a reply brief. *See* ECF No. 13. For the reasons set forth below, Plaintiff's motion for judgment on the pleadings (ECF No. 11) is **GRANTED**, the Commissioner's motion for judgment on the pleadings (ECF No. 12) is **DENIED**, and this matter is **REMANDED** to the Commissioner for further administrative proceedings as set forth below.

## <u>BACKGROUND</u>

Plaintiff protectively filed his applications for DIB and SSI on April 23, 2014, alleging disability beginning March 27, 2014 (the disability onset date), due to chronic heart failure, high

blood pressure, depression, anxiety, SAB [*sic*], fatigue, tightness in chest, and OCD. Transcript ("Tr.") 431-44, 435-44, 505. Plaintiff's claims were denied initially on November 14, 2014, and again upon reconsideration on June 25, 2015; thereafter Plaintiff requested an administrative hearing. Tr. 243-53. On April 27, 2018, Administrative Law Judge Wayne L. Ritter (the "ALJ") presided over a hearing in Milwaukee, Wisconsin.[1] Tr. 10, 33-79. Plaintiff appeared and testified at the hearing and was represented by Vincent Angermeier ("Mr. Angermeier"), an attorney. Tr. 10, 41-83. Todd Gendreau, an impartial vocational expert ("VE"), also appeared and testified at the hearing. *Id.* A supplemental hearing was held on March 26, 2019. Tr. 10, 87-153. Hugh R. Savage M.D. ("Dr. Savage"), an impartial medical expert, and Joe Entwisle, an impartial vocational expert, appeared and testified via telephone. Plaintiff was again represented by Mr. Angermeier.

The ALJ issued an unfavorable decision on June 19, 2019, finding that Plaintiff was not disabled. Tr. 10-30. On November 20, 2019, the Appeals Council denied Plaintiff's request for further review. Tr. 1-6. The ALJ's June 19, 2019 decision thus became the "final decision" of the Commissioner subject to judicial review under 42 U.S.C. § 405(g).

## LEGAL STANDARD

### I.   District Court Review

"In reviewing a final decision of the SSA, this Court is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (citing 42 U.S.C. § 405(g)) (other citation omitted). The Act holds that the Commissioner's decision is "conclusive" if it is supported by substantial evidence. 42 U.S.C. § 405(g). "Substantial evidence means more

---

[1] Plaintiff's hearing was before the ALJ on remand from the Appeals Council after the case was dismissed due to Plaintiff's failure to appear at a previously scheduled hearing. Tr. 236-238.

than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (citations omitted). It is not the Court's function to "determine *de novo* whether [the claimant] is disabled." *Schaal v. Apfel*, 134 F. 3d 496, 501 (2d Cir. 1990).

## II.    The Sequential Evaluation Process

An ALJ must follow a five-step sequential evaluation to determine whether a claimant is disabled within the meaning of the Act. *See Parker v. City of New York*, 476 U.S. 467, 470-71 (1986). At step one, the ALJ must determine whether the claimant is engaged in substantial gainful work activity. *See* 20 C.F.R. § 404.1520(b). If so, the claimant is not disabled. If not, the ALJ proceeds to step two and determines whether the claimant has an impairment, or combination of impairments, that is "severe" within the meaning of the Act, meaning that it imposes significant restrictions on the claimant's ability to perform basic work activities. *Id*. § 404.1520(c). If the claimant does not have a severe impairment or combination of impairments meeting the durational requirements, the analysis concludes with a finding of "not disabled." If the claimant does, the ALJ continues to step three.

At step three, the ALJ examines whether a claimant's impairment meets or medically equals the criteria of a listed impairment in Appendix 1 of Subpart P of Regulation No. 4 (the "Listings"). *Id*. § 404.1520(d). If the impairment meets or medically equals the criteria of a Listing and meets the durational requirement, the claimant is disabled. *Id*. § 404.1509. If not, the ALJ determines the claimant's residual functional capacity, which is the ability to perform physical or mental work activities on a sustained basis notwithstanding limitations for the collective impairments. *See id*. § 404.1520(e)-(f).

The ALJ then proceeds to step four and determines whether the claimant's RFC permits him or her to perform the requirements of his or her past relevant work. 20 C.F.R. § 404.1520(f).

If the claimant can perform such requirements, then he or she is not disabled. *Id.* If he or she

cannot, the analysis proceeds to the fifth and final step, wherein the burden shifts to the

Commissioner to show that the claimant is not disabled. *Id.* § 404.1520(g). To do so, the

Commissioner must present evidence to demonstrate that the claimant "retains a residual

functional capacity to perform alternative substantial gainful work which exists in the national

economy" in light of his or her age, education, and work experience. *See Rosa v. Callahan*, 168

F.3d 72, 77 (2d Cir. 1999) (quotation marks omitted); *see also* 20 C.F.R. § 404.1560(c).

## ADMINISTRATIVE LAW JUDGE'S FINDINGS

The ALJ analyzed Plaintiff's claim for benefits under the process described above and

made the following findings in his June 19, 2019 decision:

1.  The claimant meets the insured status requirements of the Social Security Act through
    March 31, 2018;

2.  The claimant has not engaged in substantial gainful activity since March 27, 2014, the
    alleged onset date (20 CFR 404.1571 *et seq.*, and 416.971 *et seq.*);

3.  The claimant has the following severe impairments: cardiomyopathy, obstructive sleep
    apnea, mild obstructive pulmonary disease, anxiety disorder and depressive disorder (20
    CFR 404.1520(c) and 416.920(c)).

4.  The claimant does not have an impairment  or combination of impairments that meets or
    medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart
    P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and
    416.926);

5.  From the alleged onset date through December 31, 2017, the claimant had the residual
    functional capacity to perform light work as defined in 20 CFR 404.1567(b) and
    416.967(b)[2] except that he could  never kneel, crawl or climb ladders, ropes and
    scaffolds. The claimant could occasionally balance, stoop, crouch and climb ramps and
    stairs. With his bilateral upper extremities, he could reach overhead only occasionally, but
    frequently reach in all other directions. With his bilateral upper extremities, he also could

---

[2]  "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing
up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal
of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg
controls. To be considered capable of performing a full or wide range of light work, [the claimant] must have the
ability to do substantially all of these activities. If someone can do light work, [the SSA] determine[s] that he or she
can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit
for long periods of time." 20 C.F.R. § 404.1567(b).

frequently handle and finger. The claimant must avoid all exposure to extreme cold or heat, unprotected heights, hazards and the use of dangerous machinery.  He must avoid more than moderate exposure to fumes, dust, odors and gases.   The claimant is limited to simple, routine and repetitive tasks, with no fast-paced work, only simple, work-related decisions, occasional workplace changes, and occasional interaction with the public, co-workers and supervisors;

6.  Beginning on January 1, 2018, the claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a)[3] except that he can never kneel, crawl and climb ladders, ropes and scaffolds. The claimant can occasionally balance, stoop, crouch and climb ramps and stairs. With his bilateral upper extremities, he can reach overhead occasionally but frequently reach in all other directions. With his bilateral upper extremities, he also can frequently handle and finger. The claimant must avoid all exposure to extreme cold or heat, unprotected heights, hazards and the use of dangerous machinery. He must avoid more than moderate exposure to fumes, dust, odors and gases. The claimant is limited to simple, routine and repetitive tasks with no fast-paced work; only simple, work- related decisions; occasional workplace changes; and occasional interaction with the public, co-workers and supervisors;

7.  Since the alleged onset date, the claimant has been unable to perform any past relevant work (20 CFR 404.1565 and 416.965);

8.  The claimant was born on July 10, 1971 and was 42 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date (20 CFR 404.1563 and 416.963);

9.  The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564 and 416.964);

10.  Transferability of job skills is not material to the determination of disability because using the  Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable  job skills (*See* SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2);

11.  Considering the claimant's age, education, work experience, and residual functional capacity, there are  jobs that exist in  significant  numbers in  the  national economy  that the claimant can perform (20 CFR 404.1569, 404.1569a, 416.969, and  416.969a);

12.  The claimant has not been under a disability, as defined in the Social Security Act, from March 27, 2014, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

Tr. 10-30.

---

[3] "Sedentary" work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.

Accordingly, the ALJ determined that, based on the application for a period of disability and disability insurance benefits protectively filed on April 23, 2014, the claimant is not disabled under sections 216(i) and 223(d) of the Social Security Act. Tr. 30. The ALJ also determined that based on the application for supplemental security benefits protectively filed on April 23, 2014, the claimant is not disabled under section 1614(a)(3)(A) of the Act. *Id*.

## ANALYSIS

Plaintiff asserts a single point of error. Plaintiff argues that the ALJ failed to properly evaluate the opinions of treating cardiologists Dianne Zwicke, M.D. ("Dr. Zwicke"), and Asad Ghafoor, M.D. ("Dr. Ghafoor"). *See* ECF No.11-1 at 12-22. Specifically, Plaintiff argues that "the ALJ rejected the opinions of Drs. Zwicke and Ghafoor for unsupported reasons and failed to recontact them before rejecting their opinion[s] for lacking additional explanations for the findings." *Id*. at 12. Plaintiff also takes issue with the ALJ's reliance on non-examining review physician Dr. Savage's opinion over those of Drs. Zwicke and Ghafoor. *Id*. at 20-21.

The Commissioner argues in response that the ALJ provided multiple valid reasons for not affording controlling weight to the opinions of Drs. Zwicke and Ghafoor and reasonably found Dr. Savage's testimony was more persuasive than the opinions of Plaintiff's treating physicians. *See* ECF No. 12-1 at 12-19. As such, argues the Commissioner, the ALJ's decision was supported by substantial evidence. *Id*.

A Commissioner's determination that a claimant is not disabled will be set aside when the factual findings are not supported by "substantial evidence." 42 U.S.C. § 405(g); *see also Shaw v. Chater*, 221 F.3d 126, 131 (2d Cir. 2000). Substantial evidence has been interpreted to mean "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id*. The Court may also set aside the Commissioner's decision when it is based upon legal error. *Rosa*, 168 F.3d at 77.

In finding that Plaintiff could perform light work through December 31, 2017 and sedentary work thereafter, the ALJ relied substantially on the opinion of non-examining review physician (Dr. Savage) which was inconsistent with the opinions of Plaintiff's treating cardiologists (Drs. Zwicke and Ghafoor). Plaintiff argues that the ALJ rejected those treating source opinions for unsupported reasons. *See* ECF No. 11-1 at 12. Further, argues Plaintiff, the ALJ sought testimony from independent medical expert Dr. Savage to offer an opinion about the functional effects Plaintiff's cardiac conditions even though the record was replete with medical opinions from Plaintiff's treating cardiologists containing limitations that supported a finding of disability.

Upon review of the entire record, including the treatment records, the objective clinical evidence, the opinions of Plaintiff's treating physicians, and the testimony of Dr. Savage, the Court finds that Plaintiff's arguments have merit. Most basically, the Court disagrees with the ALJ's conclusion that Dr. Savage's testimony "[made] sense overall" and was the "most persuasive opinion evidence available." Tr. 19, 20. To the contrary, Dr. Savage's testimony was incoherent and confusing at times; his opinions wavered; and his functional capacity assessments were unclear. In fact, the ALJ admitted that Dr. Savage's testimony was not "polished" and "can be attacked on various grounds." Tr. 19, 20. That is an understatement. The Court finds the ALJ's assignment of "persuasive" weight to Dr. Savage's opinions and "some" or "little" weight to the opinions of treating physicians Drs. Zwicke and Ghafoor is not supported by the record. Therefore, the ALJ's RFC finding is not supported by substantial evidence, and remand is warranted.

Plaintiff suffered from significant cardiac conditions and mental health symptoms[4] throughout the relevant period. Objective testing revealed he suffered from chronic heart failure.

---

[4] The Court notes that Plaintiff's mental health impairments are not at issue in this appeal. Plaintiff only challenges the ALJ's evaluation of Dr. Zwicke and Dr. Ghafoor's opinions, both of which involved Plaintiff's cardiac and pulmonary symptoms. Accordingly, the Court will limit its analysis to the specific issue raised on appeal.

Dr. Savage's opinion was at odds with the largely consistent opinions of Plaintiff's treating cardiologists and was based significantly on speculation and inferences as to the cause of Plaintiff's fluctuating ejection fraction (including his assumption that Plaintiff was not being honest about his tobacco intake) that were not supported by any of the treatment notes, treating opinions, or Plaintiff's reports or testimony. *See* Tr. 20, 102-104, 122-124, 127-132.

Drs. Zwicke and Ghafoor provided medical source statements assessing the functioning effects of Plaintiff's various cardiac conditions. As noted above, their opinions were significantly similiar to each other. In their medical source statements, both physicians listed Plaintiff's symptoms as fatigue, shortness of breath, and exertional lightheadedness and side effects as dizziness and fatigue. Tr. 1112, 1696. In addition, they both opined he was unable to work an 8-hour workday and had limitations with walking, standing, and sitting. Tr. 1112, 1696. Furthermore, they both opined he had significant lifting and carrying restrictions and would be absent from work due to his impairments and treatment. Tr. 1113, 1698. In separate letters, they both explained, "Diastolic dysfunction can result in severe functional limitations, as in the case of Mr. Breyer, despite preserved left ventricular systolic function." Tr. 1452, 1699. Although the two opinions provided additional limitations that were not identical to one another, their limitations could have reasonably supported a finding of disability.

The ALJ assigned some weight to Dr. Zwicke's opinions overall, little weight to her opinions regarding Plaintiff's work limitations, and some weight to Dr. Ghafoor's opinions, articulating similar reason for the weights assigned. Tr. 21, 26. For various reasons, the Court finds that the ALJ's articulated reasons for diminishing these opinions are not supported by substantial evidence. As an example, the ALJ noted that, around the time Dr. Zwicke provided her opinions (March and April 2017), Plaintiff "was able to go almost one year without medical care, despite having medical insurance." Tr. 21. However, the record reflects the following medical visits during

this period: Dr. Zwicke on June 21, 2016, October 25, 2016, March 8 2017, and December 13, 2017; Plaintiff's primary care provider on December 22, 2017 and March 23, 2018; and his pulmonologist on February 1, 2018. Tr. 1226, 1460, 1481, 1493, 1510, 1594. In addition, Plaintiff underwent a cardiopulmonary stress test on October 18, 2016; an echocardiogram on December 13, 2017; and he was hospitalized from February 19, 2018 to February 22, 2018 for noncardiac chest pain, non-ischemic cardiomyopathy, and hypertension. Tr.1344-1345, 1484, 1538-1539. It is unclear why the ALJ believed Plaintiff had gone almost a year without medical care during his treatment relationship with Dr. Zwicke.

The ALJ also questioned the medical link between Plaintiff's symptoms and diagnostic and clinical findings and Dr. Zwicke's opined limitations regarding Plaintiff's ability to sit, squat, and work above the shoulder, his need for extra breaks, and the likelihood of work absences (Tr. 21), and Dr. Ghafoor's opined limitations regarding a sit/stand at will option, unscheduled breaks, need to elevate Plaintiff's legs, lifting, carrying, and postural actions, off-task time, and absences (Tr. 26). However, ALJ's mere speculation that there were no such links improperly undermines Dr. Zwicke's and Ghafoor's expertise and their medical findings. *See Balsamo v. Chater*, 142 F.3d 75, 81 (2d Cir.1998) ("[A]n ALJ must rely on the medical findings contained within the record and cannot make his own diagnosis without substantial medical evidence to support his opinion."); *see also Smith v. Colvin*, 218 F.Supp.3d 168, 174 (E.D.N.Y. 2016) (finding the ALJ erred by elevating his personal view of the medical evidence over the treating physician's opinion); *Oatman v. Comm'r of Soc. Sec.*, 2014 WL 4384986, at *6 (N.D.N.Y. Sept. 4, 2014) (finding the ALJ improperly made a medical determination and set his own expertise against that of the treating physician when he asserted "there is nothing in [the treating physician's] records documenting that the claimant has any problems sitting" to reject the physician's opinion that Plaintiff could not sit for six hours in a work) (citations omitted).

Furthermore, if the ALJ believed these treating source opinions lacked sufficient information to support their findings, it would have been prudent for him to recontact them before outright rejecting their opinions for missing that information. *See Rodriguez v. Comm'r of Soc. Sec.¸* 2020 WL 3968267, at \*16 (S.D.N.Y. July 14, 2020) (quoting *Calzada v. Astrue*, 753 F. Supp. 2d 250, 269 (S.D.N.Y. 2010)) ("Where a physician's findings do not retain a clear explanation and leave cause for confusion, 'the ALJ must seek clarification and additional information from the physician' before disregarding the assessment."); *see also Gulczewski v. Comm'r of Soc. Sec.*, 2020 WL 2846948, at \*5 (W.D.N.Y. June 2, 2020) (quoting *Ubiles v. Astrue*, 2012 WL 2572772, at \*9 (W.D.N.Y. July 2, 2012)) ("it is unreasonable to expect a physician to make, on [his or her] own accord, the detailed functional assessment demanded by the Act in support of a patient seeking . . . benefits."); *Austin v. Comm'r of Soc. Sec.*, 2019 WL 4751808, at \*6 (E.D.N.Y. Sept. 30, 2019) ("Before the ALJ can disregard a treating physician's medical opinion, the ALJ must first ask the treating physician to clarify the deficiencies the ALJ perceives in that opinion.").

The ALJ also failed to explain how Plaintiff's limited sedentary activities like "architectural drawing, watching television and playing computer games" indicated he was not as limited in his ability to sit as found by Dr. Zwicke. Tr. 21. *See, e.g.*, *Miller v. Colvin*, 122 F. Supp. 3d 23, 29 (W.D.N.Y. 2015) (finding that the ALJ erroneously discredited a treating source's opinion because plaintiff was "capable of activities such as engaging in activities of daily living, fixing cars in a garage, and overseeing his own medical psychiatric treatment"). The ALJ also failed to explain how Plaintiff's performance of these activities undermined Dr. Zwicke's opinion that Plaintiff had limitations with sitting. *See id.* at 29 (finding the plaintiff's ability to perform activities for an unspecified amount of time did not undermine a doctor's opinion regarding Plaintiff's limitation); *see also Woodling v. Comm'r of Soc. Sec.*, No. 1:17-CV-0606 (WBC), 2018 WL 4468824, at \*2 (W.D.N.Y. Sept. 18, 2018), 2018 WL 4468824, at \*6 (W.D.N.Y. Sept. 18,

2018) (citing *Miller*, 122 F. Supp. 3d 23, 29) (finding the ALJ erred because he "did not explain how the performance of Plaintiff's activities translated into the ability to perform substantial gainful work").

Moreover, the ALJ's assertion that Dr. Zwicke "excused [Plaintiff's] medical noncompliance even though she knew it would affect his health condition, and logically, his ability to work" mischaracterizes the evidence. Tr. 21. There was no evidence in the record or narrative from Dr. Zwicke to support that assertion, and the ALJ's speculative conclusion was not a proper basis for rejecting Dr. Zwicke's opinions. *See Soto-Rivera v. Comm'r of Soc. Sec.*, 2019 WL 2718236, at \*5 (W.D.N.Y. June 28, 2019) (citing *Rivera v. Berryhill*, 2019 WL 692162, at \*12 (S.D.N.Y. Jan. 28, 2019)) (finding the ALJ's assertion that "the possibility always exists that a doctor or medical clinician may express an opinion in an effort to assist a patient with whom he or she sympathizes" to reject a treating opinion was "not only unsupported anywhere in this record, but also unfairly denigrates the entire medical profession" and finding "[m]ere speculation of impropriety is not an adequate justification for discounting a treating physician's opinion") (internal quotations omitted).

Based on the foregoing, the Court finds that the ALJ failed to properly evaluate Drs. Zwicke and Ghafoor's opinions, and his articulated reasons for rejecting their opinions were unsupported. As noted above, to the extent the ALJ found these opinions lacked adequate explanations in accordance with the Agency's standards, he should have recontacted the physicians for additional information before summarily rejecting them. Finally, the ALJ should not have relied on Dr. Savage's speculative and incoherent opinions over the treating opinions of Drs. Zwicke and Ghafoor. *See Ridge v. Berryhill*, 294 F.Supp 3d 33, 61 (E.D.N.Y. 2018); *see also Bradley v. Colvin*, 110 F.Supp. 3d 429, 445 (E.D.N.Y. 2015) (citing *McKissick v. Barnhart*, 2002 WL 31409933, at \*16 (E.D.N.Y. Sept. 30, 2002)) ("Bradley's treating physicians were all in

agreement that she could not sit continuously in a work setting and could only do so for considerably less than 6 hours a day. The only support for the ALJ's RFC was the testimony of the non-examining medical expert, Dr. Spinelli. Accordingly, the ALJ's determination of Bradley's RFC was not supported by substantial evidence, and must be overturned."); *see also Horace ex rel. J.J.J. v. Colvin*, 2015 WL 1924992, at *13 (W.D.N.Y. Apr. 28, 2015) (citing *Roman v. Astrue*, 2012 WL 4566128 at *5, 15-17 (E.D.N.Y. Sep. 28, 2012)) (finding the ALJ erred by relying heavily on a non-examining medical expert's opinion, over the plaintiff's counsel's objection, whose testimony was inconsistent with the records she had for her review).

For all these reasons, this case is remanded for proper consideration of the medical opinion evidence, as set forth in this opinion.

## **<u>CONCLUSION</u>**

Plaintiff's Motion for Judgment on the Pleadings (ECF No. 11) is **GRANTED**, the Commissioner's Motion for Judgment on the Pleadings (ECF No. 12) is **DENIED**, and this matter is **REMANDED** to the Commissioner for further administrative proceedings consistent with this opinion pursuant to sentence four of 42 U.S.C. § 405(g). *See Curry v. Apfel*, 209 F.3d 117, 124 (2d Cir. 2000). The Clerk of Court is directed to enter judgment and close this case.

**IT IS SO ORDERED**.

DON D. BUSH
UNITED STATES MAGISTRATE JUDGE